United States District Court
District of Massachusetts

FILED
IN CLERKS OFFICE
2021 SEP -2 PM 12: 40
U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Case No. 1:20-cr-10197-LTS |
| v. | ) |
| | ) |
| WILSON GONCALVES-MENDES | ) |
| Defendant, | ) |

## MEMORANDUM AND MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Now comes the accused Wilson Goncalves-Mendes denying and challenging the jurisdiction of the above-named court over the subject matter in the above-entitled cause, for the reasons explained in the following memorandum:

### MEMORANDUM OF LAW

**I.     The Nature of Subject Matter Jurisdiction.**

The jurisdiction of a court over the subject matter has been said to be essential, necessary, indispensable and an elementary prerequisite to the exercise of judicial power. 21 C.J.S., "Courts" § 18, p. 25. A court cannot proceed with a trial or make a judgment without such jurisdiction existing.

It is elementary that the jurisdiction of the court over the subject matter of the action is the most critical aspect of the court's authority to act. Without it the court lacks any power to proceed; therefore, a defense based upon this lack cannot be waived and may be asserted at any time. United States v. Corrick, 298 U.S. 435 (1936).

Subject matter jurisdiction cannot be conferred by waiver or consent, and may be raised at any time. Gosa v. Mayden, 413 U.S. 665, 708 (1973). The subject matter jurisdiction of a criminal case is related to the cause of action in general, and more specifically to the alleged crime or offense which crates the action. The subject-matter of a criminal offense is the crime itself. Subject-matter in its broadest sense means the cause; the object; the thing in dispute. "Subject matter jurisdiction may be raised by either party or the court at any time and cannot be conferred by waiver." See United States v. Cotton, 535 U.S. 625, 630, 122 S. Ct. 1781, 152 L. Ed. 2d 860 (2002).

Furthermore, an indictment or complaint in a criminal case is the main means by which a court obtains subject matter jurisdiction, and is "the jurisdictional instrument upon which the accused stands trial. The complaint or indictment is the foundation of the jurisdiction of the magistrate or court. Thus if these charging instruments are invalid, there is a lack of subject matter jurisdiction.

An act committed within a State, whether for good or bad purpose, or whether with honest or a criminal intent, cannot be made an offense, unless it have some relation to the execution of a power of Congress, or to some matter within the jurisdiction of the United States. See United States v. Fox, 95 U.S. 670, 672 (1877).

In most cases in which there would be subject matter jurisdiction are self-evident. If a subject matter or the crimes alleged was to have been committed outside the territorial jurisdiction of the court, then the court would not have jurisdiction over the thing or crime involved. Where judicial tribunals have no jurisdiction of subject matter, the proceedings are void. See 21 C.J.S., "Courts," § 18, p. 25. Subject matter jurisdiction is lacking in this matter, this court can do nothing except dismiss the cause of action. Any other court proceeding is usurpation.

No authority need to be cited for the proposition that, when a court lacks jurisdiction, any judgment rendered by it is void and unenforceable, *** and without any force or effect. Hooker v. Boles, 346 Fed.2d 285, 286 (1965). For the court with trial and make a judgment or sentence after such a jurisdictional challenge has been made, would simply result in an act of usurpation and treason. Judgment lacking subject jurisdiction is void. Burnham v SUPERIOR COURT OF CAL., County of marin, 495 US 604, 110 SCT 2105, 109 LED2D 631, (1990).

Ashley v. United States, 37 F. Supp. 2d 1027, 1029 (W.D. Mich. 1997). "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." Sweeton v. Brown, 27 F.3d 1162, 1169 (6th Cir. 1994) (quoting United States v. Siviglia, 686 F.2d 832, 835 (10th Cir. 1981), cert. denied, 461 U.S. 918, 103 S. Ct. 1902, 77 L. Ed. 2d 289 (1983)).

**"When subject matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction in order to survive a motion to dismiss."** Wayside Church v. Van Buren Cty., 847 F.3d 812, 817 (6th Cir. 2017).

Once jurisdiction is challenged, the court cannot proceed when it clearly appears that the court lacks jurisdiction, the court has no authority to reach its merits, but rather should dismiss the action. Melo v. U.S. 505 F.2d 1026 (8th Cir. 1974).

"There is no discretion to ignore lack of jurisdiction." Joyce v. U.S. 474 F.2d 215 (3rd Cir. 1973). "Court must prove on the record, all jurisdiction Facts related to the jurisdiction asserted." Lantana v. Hopper, 102 F.2d 118; Chicago v. New York 37 F Supp. 150 (5th Cir. 1939).

"The law provides that once state and Federal Jurisdiction has been challenged, it must be proven." 448 U.S. 1, 100 S. Ct. 2502, 65 L. Ed. 2d 555 (1980). "Jurisdiction can be challenged at any time." Basso v. Utah Power and Light Co. 495 F.2d 906, 910 (10th Cir. 1974). "Once Challenged, jurisdiction cannot be assumed, it must be proved to exist." Stuck v. Medical Examiners 94 Ca 2d 751, 211 P.2d 389.

Though not specifically alleged, defendant's challenge to subject matter jurisdiction implicitly raised claim that default judgment against him was void and relief should be granted under Rule 60(b)(4). Honneus v. Donovan, 93 F.R.D. 433, 436-37(1982), aff'd, 691 F.2d 1 (1st Cir. 1982)

Kocher v. Dow Chem. Co., 132 F.3d 1225, 1230-31 (8th Cir. 1987) (as long as there is an "arguable basis" For subject matter jurisdiction a judgment is not void)

## COMMERCE CLAUSE

Congress has inherent authority to pass criminal laws which prohibit activity interfering with a federal interest. Under our federal system, the states possess primary authority for defining and forcing criminal law. For congress to prohibit noncommercial intrastate criminal activity, the Government must show that the conduct in question substantial affects interstate commerce, here, the government has not established (and cannot) such burden. It is well-established that the Constitution created a federal government of limited powers. This principle is embodied in U.S. Const. amend. X. See U.S. Const. Amend. X.

Because Congress does not have unfettered discretion to pass laws, all federal enactments must be "based on one or more powers enumerated in the Constitution." United States v. Morrison, 529 U.S. 598, 120 S. Ct. 1740, 1748, 146 L. Ed. 2d 658 (2000); Marbury v. Madison, 5 U.S. 137, 1 Cranch 137, 176, 2 L. Ed. 60 (1803).

## MOTION

Based upon the above memorandum. The Accused moves that this action and cause be dismissed for lack of subject matter jurisdiction

A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking. United States v. Siviglia, 686 Fed. 2d 832, 835 (1981), cases cited.

Consequently, there is no subject matter jurisdiction by which I can be tried in the United States District of Massachusetts.

Pursuant to Fed. R. Crim. P. 12 (b)(2), a defendant may raise defenses and objections based on defects in the indictment or information before trial. Challenges to the efficacy of federal jurisdiction may be raised at any time during the pendency of the proceedings. As used in Fed. R. Crim. P. 12, jurisdiction refers to jurisdiction over the subject matter.

Mr. Goncalves-Mendes is raising a jurisdictional question concerning the scope of congress' power under the Commerce Clause, to wit: whether the enterprise at issue engaged in interstate or foreign commerce, or whether its activities affected interstate or foreign commerce. Whether Congress has the power to reach the alleged criminal involved in this case is in fact a question of law, and not a question of fact for the jury. Thus, the issue may be determined pretrial.

## RICO

Here, the indictment alleges a pattern of racketeering activity based solely upon "acts involved states crimes. Cf. United States Garcia, 143 F. Supp. 2d 791 (E.D. Mich. 2000), the court dismissed a RICO indictment based on an insufficient interstate commerce nexus where the alleged predicate acts for the RICO counts were "based solely on violations of on violations of [state] murder statutes." 143 F. Supp. At 797.

In this matter, the predicate acts that form the basis for the RICO counts are based solely on violation of Connecticut state statutes. The predicate do not include other allegations such as robbery, hijacking, car theft, or extortion, which are typical present in RICO cases. The only other allegation that might support a predicate act in this matter is violation of 21 U.S.C. § 846 in which Mr. Goncalves-Mendes is not being charged or alleged to have violated such statute.

Furthermore, nothing in the indictment or any government argument will indicate (establishes) that there was in fact any economic component to the activities of the N.O.B. street gang, and the gang cannot be said to have "engaged in interstate commerce" within the meaning of RICO § 1962(c). See United States v. Robertson, 514 U.S. 669, 671-72, 121 L. Ed. 2d 714, 115 S. Ct. 1732 (1995); United States v. American Bldg. Maintenance Indus., 422 U.S. 271, 283-85, 45 L. Ed. 2d 177, 95 S. Ct. 2150 (1975).

In fact, the N.O.B. street gang cannot be said to have "engaged in interstate or foreign commerce." The Government's proffer ties to interstate are weak, and they do not involve interstate financial transactions, or interstate movement of people or goods for commercial purposes of economic gains. This Honorable court may not accept the government's theory that the enterprise here engaged in interstate commerce because

its members traveled or allegedly committed certain crimes within the state of Connecticut. Robertson, 514 U.S. at 672. Nor can the Government argue that firearms engaged in interstate commerce. E.g., United States v. Rewis, 401 U.S. 808, 28 L. Ed. 2d 493, 91 S. Ct. 1056 (1971).

However, the alleged crimes committed by the N.O.B. street gang is insufficient to constitute a de minimus effect on commerce. Committing violent crimes intrastate cannot be concluded to effect commercial activity or that they could, in the aggregate, constitute substantial effects on commercial activity. E.g., United States v. Juvenile Male, 118 F.3d 1344, 1349-50 (9th Cir. 1997).

For all reasons discussed above, the gang cannot be said to have "engaged in" interstate commerce for RICO purposes. The court must consider whether the activities of the enterprise effected interstate commerce, in which here it did not. Although the De Minimus test may survive RICO purposes, it cannot be applied in a way that would require the Court to pile inference together to reach the required jurisdictional nexus, in light of Lopez, 514 U.S. at 567; and Morrison, 120 S. Ct. at 1754.

Moreover, the RICO statute at issue here finds its justification in the Commerce Clause, U.S. Const. art. 1, § 8, cl. 3, which grants Congress the power to "regulate Commerce with foreign Nations, and among several States, and with the Indian Tribes." Id. The Commerce Clause affords Congress the opportunity to regulate three categories of activity: **(1)** that involving the use of channels of interstate commerce; **(2)** that involving instrumentalities of interstate commerce, or the persons or things in interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities: and **(3)** that substantially affecting interstate commerce. Morrison, 120 S. Ct. at 1749; United States v. Lopez, 514 U.S. 549, 558-59, 131 L. Ed. 2d 626, 115 S. Ct. 1624 (1995). The third category is implicated in this matter.

As the legislative backdrop of RICO makes clear, it was intended to curb organized crime aimed at corrupting legitimate business. The statute was aimed at economic enterprise, in large part, at crimes which economic in character. See H.R. Rep. No. 1549, 91st Cong., 2nd Sess 1970, 1970 U.S.C.C.A.N. 4007.

## CONCLUSION

The Defendant respectfully request that this Honorable Court grant this motion to dismiss lack of subject matter jurisdiction, here, the federal government has exceeded its jurisdiction when it steps in this manner into the arena of local non-economical violent crime. Precedent in the Supreme Court emphasize that the prosecution and punishment for these crimes charged in the indictment must be undertaken by the States.

As reasons mentioned above, the court must grant this motion to dismiss.

## CAVEAT

Mr. Goncalves-Mendes regards it as just and necessary to give fair warning to this court of the consequences of its failure to follow the Constitution of the United States of America and uphold its oath and duty in this matter, being that it can result in this Court committing acts of treason, usurpation, and tyranny. Such trespasses would be clearly evident to the public, especially in light of the clear and unambiguous provisions of the Constitution that are involved here which leave no room for construction , and in light of the numerous adjurations upon them as herein stated. The possible breaches of law that may result by denying this motion are enumerated as follows:

1. The failure to uphold these clear and plain provisions of our Constitution cannot be regarded as mere error in judgment, but deliberate USURPATION. Usurpation is defined as unauthorized arbitrary assumption and exercise of power. While error is only voidable, such usurpation is viod.

   > The boundary between an error in judgment and the usurpation of judicial power is this: The former is reversible by an appellate court and is, therefore, only voidable, which the latter is a nullity.
   > To take jurisdiction where it clearly does not exist is usurpation, and no one is bound to follow acts of usurpation, and in fact it is a duty of citizens to disregard and disobey them since they are void and enforceable.
   > No authority need be cited for the proposition that, when a court lacks jurisdiction, any judgment rendered by it is void and unenforceable. Hooker v. Boles, 346 Fed. 2d. 285, 286 (1965).
   > The fact that the "United States Statutes" has been in use for over forty years cannot be held as a justification to continue to usurp power and set aside the constitutional provisions which are contrary to such, as Judge Cooley stated:
   > Acquiescence for no length of time can legalize a clear usurpation of power, where the people have plainly expressed their will in the constitution. Cooley, Constitutional Limitations, p. 71.

2. The judges of this Honorable Court took an oath to uphold and support the Constitution of the United States, and is blatant disregarded of that obligation and allegiance can only result in an act of treason.

3. If this Court departs from the clear meaning of the Constitution, it will be regarded as a blatant act of TYRANNY. Any exercise of power which is done without the support of law or beyond what the law allows is tyranny.

   > It has been said, with much truth, "Where the law ends, tyranny begins." Merritt v. Welsh, 104 U.S. 694, 702 (1881).

Tyranny and despotism exist where the will and pleasure of those in the government is followed rather than established law. It has been repeatedly said and affirmed as a most basic principle of our government

6

that, "this is a government of laws and not men; and that there is no arbitrary power located in any individual or body of individuals." Cotting v. Kansas City Stock Yards Co., 183 U.S. 79, 84 (1901).

"Any judge who does not comply with his oath to the Constitution of the United States wars against that Constitution and engages in acts in violation of the supreme law of the land. The judge is engaged in acts of treason." -- Cooper v. Aaron, 358 U.S. 1, 78 S. Ct. 1401 (1958)

Judges are deemed to know the law and are sworn to uphold and can hardly claim that they acted in good faith for willful deformation of a law and certainly cannot plead ignorance of the law.

"It is the duty of the courts to be watchful for the Constitutional rights of the citizen and against any stealthy encroachments thereon". [Boyd v. United States, 116 U.S. 616, 635] "It will be an evil day for American Liberty if the theory of a government outside supreme law finds lodgment in our constitutional jurisprudence.

No higher duty rest upon this Court than to assert its full authority to prevent all violations of the principles of the Constitution." [Downs v. Bidwell, 182 U.S. 244 (1901) "We (judges) have no more right to decline the exercise of jurisdiction which is given, than usurp that which is not given. The one or the other would be treason to the Constitution." [Cohen v. Virginia, (1821), 6 Wheat. 264 and U.S. v. Will, 449 U.S. 200] "it may be that it is the obnoxious things in its mildest form; but illegitimate and unconstitutional practices get their first footing in that way; namely, by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provisions for the security of persons and property should be liberally construed.

A close and literal construction deprives them of half their efficacy, and leads to gradual depreciation of the right, as if it constituted more in sound than in substance. It is the duty of the Courts to be watchful for the Constitutional rights of the Citizens, and against any stealthy encroachments thereon. Their motto should be Obsta Principiis." [Boyd v. United States 116 U.S. 616 at 636 (1885).]

## CANNONS

At trial and hearings the judges presides and rules on issues occurring during the trial. In jury cases, the judge presides over the selection of the jury and instructs the jury concerning the law of the case. The judge may also be called upon to rule made before the start of trial.

From the time the oath of office is taken, judges at all levels are bound to conduct themselves in an ethical manner and to adhere to a code of judicial conduct.

7

**Canon 1.** A judge shall uphold and promote the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety.

**Canon 2.** A judge shall perform the duties of judicial office impartially, competently, and diligently.

**Canon 3.** A judge shall conduct the judge's personal and extrajudicial activities to minimize the risk of conflict with the obligations of judicial office.

**Canon 4.** A judge or candidate for judicial office shall not engage in political or campaign activity that is inconsistent with the independent, integrity, or impartiality of the judiciary.

Respectfully Submitted,
By Wilson Goncalves-Mendes

Date: August 30, 2021

### CERTIFICATE OF SERVICE

I Wilson Goncalves-Mendes hereby certify that the foregoing document is being served today by United States mail to The District Court.