United States District Court
District of Massachusetts

FILED IN CLERKS OFFICE 2021 SEP -2 PM 12: 40 U.S. DISTRICT COURT DISTRICT OF MASS.

United States of America )
)  Case No. 1:20-cr-10197-LTS
v. )
)
WILSON GONCALVES-MENDES )
Defendant, )

## DEFENDANT'S MOTION TO SUPPRESS

Mr. Goncalves-Mendes asserts that (1) the affidavit in support of the application for the search warrant contains material false information; (2) There was no probable cause to support the issuance of the search warrant; (3) The items seized clearly exceeded the scope of the search warrant; (4) Global Positioning System ("GPS") data obtained from an electronic monitoring ("ELMO") device that he was required to wear as a condition of his pre-trial release on state charges, since such data was obtained and used in violation of his rights under the Fourth Amendment of the United States of the United States Constitution; (5) All information obtained from his cell phone pursuant to the search warrant prior to his arrest, as fruits of the prior unconstitutional search; and (6) Any and all statements, identity that was discovered during the pre-textual / racially motivated stop that occurred on November 21, 2018.

Additionally, the Defendant is respectfully requesting an evidentiary hearing / Franks hearing on this motion, and asserts the following facts and law in support of this motion to suppress.

## INTRODUCTION

The warrant issued on June 4, 2020, and was executed on June 16, 2020 at 6:00 AM. The warrant was supported by Boston Police Department Detective Brian Ball. In its prefatory paragraphs the affidavit follows a familiar pattern, setting out agent Brian Ball's training and experience, followed by a description of the typical behaviors and practices of the criminal activities of a criminal organization identified as "NOB," as well as related criminal activities involving a criminal organization known as the Wendover Street Gang ("Wendover") and the types of incriminating evidence that can be expected to be found in their possession. The affidavit in support of the search warrant mentions that Mr. Goncalves-Mendes was under surveillance pursuant to an investigation that commenced in the summer of 2019. The investigation / Affidavit in support of the search warrant do not support the finding that Mr. Goncalves-Mendes was involved in criminal activity in violation of 18 U.S.C. 1959, 1962(d), nor does the affidavit support an inference that the items sought will be located at the targets premises when the search warrant was executed. Sgro v. United States, 287 U.S.

206, 210-211, 53 S. Ct. 138, 77 L. Ed. 260 (1932). The indictment also charges the defendant in violation of 21 U.S.C. 841, and 846. On May 6, 2020, investigators conducted surveillance at the target location and allegedly what appeared to be a street level drug transaction take place at the target location.

The discovery indicates that the case against Mr. Goncalves-Mendes will be based on law enforcements testimony, eye witness testimony, videotapes, audio recording, as well as Defendant participating in gang related videos as a member/associate of "N.O.B.", audio recording of a phone conversation that occurred on May 7th, 2020, DNA, GPS data, and cell phone data. As to the Defendant there is no such eye witness testimony or video indicating he was involved in gang related videos as a member/associate of "N.O.B.", nor is there any audio recording indicating an agreement that Mr. Goncalves-Mendes was involved in a conspiracy, or attempted to conspire, nor was the defendant found to be in possession of 50k from drugs he allegedly trafficked.

Instead, the government solely relies on circumstantial evidence. In particular, it seeks to show that the Defendant was seen on one occasion to be engaged in what appeared to be a "street level drug transaction" take place at the targets residence.

Importantly, the government also seeks to use GPS location information derived from ELMO device that the Defendant was wearing as a condition of pre-trial release on state charges. The GPS data places Mr. Goncalves-Mendes at his residence (target location) of the alleged transaction during the surveillance that was allegedly conducted on May 6th, 2020. No warrant was obtained either before the state court that imposed the monitoring device on the Defendant nor before the federal agents, whom obtained the GPD data during the course of the investigation / surveillance.

## ARGUMENT
### (A). Affidavit in support of Search Warrant Contains Material False Information

Here, the Defendant asserts that the affidavit in support of a search contains material false information, and that the affiant intentionally and recklessly provided this Honorable Court with false information in order to establish probable cause. The material false information consist of:

(1). Goncalves –Mendes has participated in some of these gang related videos and has been established to be identified as an incarcerated member / associate of NOB. (See USAO-001058)
(2). On May 6th, 2020, investigators observed what appeared to be a street level drug transaction take place at the target location. (See USAO-001062)
(3). On May 7th, 2020 the Defendant conducted a recorded jail call with Ricky Pina (who was incarcerated at the moment), investigators determined that Goncalves-Mendes was seeking to engage in drug trafficking activities with Pina. (See USAO-001062)
(4). A majority of information provided in supporting a finding of probable cause was reckless information and a majority of the information provided was irrelevant to the Defendant or his residence, most of the incidents mention in the affidavit pertain to other individuals, there is no connection to such incidents and the Defendant's residence. See USAO 001056-001061

"Sufficient information must be presented to a magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others. Even if a warrant application is supported by more than a "bare bones" affidavit, a reviewing court may properly conclude that, notwithstanding the deference that magistrates deserve, the warrant is invalid because the magistrate's probable-cause determination reflected an improper analysis of the totality of the circumstances, or because the form of the warrant was improper in some respect." United States v. Trung Chi Truong, 921 F. Supp. 39 (1st Cir. 1996).

### (B). There Was No Probable Cause to Issue a Search Warrant

Moreover, it is undisputed Mr. Goncalves –Mendes has a right to be free from unreasonable searches and seizures and has a right to be the subject of a warrant only when the warrant is supported by probable cause and particularly describes the place and people to be searched. U.S. Const. Amend. IV. ("The right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause. . . particularly describing the place to searched, and the person or things to be seized.").

Furthermore, in evaluating an alleged violation of the warrant Clause of the Fourth Amendment, it is helpful to distinguish between the two district phases of a search warrant. As to the issuance of a search warrant and particularly describes the place to be searched. Before an officer may undertake a search, the Fourth Amendment "requires the judgment of a magistrate on the probable-cause issue and the issuance of a warrant." Chambers v. Maroney, 399 U.S. 42, 51, 26 L. Ed. 2d 419, 90 S. Ct. 1975 (1970); see Illinois v. Gates, 462 U.S. 213, 239, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983) ("Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification off the bare conclusion of others.") While magistrates do not possess sole discretion to make a probable-cause determinations, "only in exigent circumstances will the judgment of the police as to probable cause serve as a sufficient authorization for a search." Id.

In addition, 'the Warrant Clause of the Fourth Amendment categorically prohibits the issuance of any warrant except one 'particularly describing the place to be searched and the person or things to be seized." Maryland v. Garrison, 480 U.S. 79, 84, 94 L. Ed. 2d 72, 107 S. Ct. 1013 (1987). "The uniformly applied rule is that a search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is Unconstitutional." Massachusetts v. Sheppard, 468 U.S. 981, 988 n.5, 82 L. Ed. 2d 737, 104 S. Ct. 3424 (19840. Absent exigent circumstances, nothing-neither the determination of probable cause

nor the confirmation that a warrant is sufficiently particular—is meant to be left to the discretion of police officers executing a warrant. Stanford v. Texas, 379 U.S. 476, 485, 13 L. Ed. 2d 431, 85 S. Ct. 506 (1965).

Here, Mr. Goncalves –Mendes contends that the warrant was invalid. In this case, Brian Ball knew before he engaged in executing the warrant that the warrant was ambiguous on its face. In additional, there is no evidence in this matter that the affidavit in support of the warrant targeted the basement of 12 Clarence Street, Brockton MA. Instead, the evidence establishes that the description given both in the warrant and affidavit fit the description of 12 Clarence Street "apartment #1" ("first level floor"), Brockton MA. Therefore, the good faith exception does not apply and all fruits derived from such search are fruits from the poisonous tree and must be suppressed. Wong Sun v. United States, 371 U.S. 471, 484-86, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963). "Evidence seized during an unlawful search cannot constitute proof against victim on the search⍰ the exclusionary prohibits extents as well to the indirect as the direct products of such invasion." Id.

In this matter, the government presented to the Magistrate Judge Page Kelly that Mr. Goncalves – Mendes alleged actions are a mere ratification of the bare conclusion of others. Law enforcement investigation commenced in the summer of 2019, consisting of two gangs, involved in various crimes, including, but not limited to, murders, attempted murders, armed robberies, drug trafficking, sex trafficking, and illegal firearm crimes. Mr. Goncalves –Mendes has not been found to be involved in any of the above mentioned criminal activity, to establish probable cause. For example: (1) The incident that occurred in October 8th, 2017 is completely irrelevant to the defendant's residence and consist of two other individuals whom were suspected of the incident that occurred on such date, and were prosecuted and convicted, the defendant's residence has no relevance to such incident; (2) Mr. Goncalves –Mendes is not a rap artist, the record establishes that the Defendant is not present in any rap videos. Law enforcement clearly has the defendant confused with another individual (misidentified), nor is being related or associated with alleged gang members is known to be committing a crime or breaking the law; (3) The incident that occurred on July 15, 2018 in New Bedford, MA does not establish adequate evidence that the defendant was involved in such incident, if fact the defendant was acquitted on such charges in state court. There was another suspect whom law enforcement allege to be involved in such incident which further supports Mr. Goncalves – Mendes's innocence that explains why the charges were dismissed, due to the lack of evidence and probable cause that the Defendant was involved in the shooting; (4) The incident that occurred on August 12th, 2018 is irrelevant to Mr. Goncalves –Mendes this further explains why two other suspects were charged for such crime. The discovery further supports the defendant's argument.

### May 6, 2020

On May 6, 2020, investigators conducted surveillance at the Defendant's residence and gave a vague description of what investigators believed to be a street-level drug transaction (See USAO-001062). This investigation that occurred provided stale inadequate information supporting a showing to establish probable cause to execute a search warrant in relation to 12 Clarence Street "apartment #1" ("first level floor"), Brockton MA. Put simply, there was no information supporting the nature of the property to be seized, the nature of the alleged crime, and the nature of the premises to be searched. Drugs are a fungible commodity that is typically quickly consumed or sold. See also Commonwealth v. Fleurant, 2 Mass. App. Ct. 250, 254-255, 311 N.E.2d 86 (1974).

"A primary consideration in evaluating whether an affidavit is sufficiently "fresh" is whether it "describes" a single transaction or a continuing pattern of criminal conduct." United States v. Tucker, 638 F.2d 1292, 1299 (5th Cir. 1981); United States v. Nocella, 849 F.2d 33, 39-40 (1st Cir. 1988) ("We agree with the Fifth Circuit that a 'primary consideration in evaluating the staleness issue is whether the affidavit describes a single transaction or a continuing pattern of criminal conduct.'") (Quoting Tucker, 638 F.2d at 1299).
"[With] a mere isolated violation, it is not unreasonable to believe that probable cause quickly dwindles with the passage of time. On the other hand, if an affidavit recites activity indicating protracted or continuous conduct, time is of less significance." Commonwealth v. Vynorius, 369 Mass. 17, 25, 336 N.E.2d 898 (1975). See also United States v. Fama, 758 F.2d 834, 838 (2d Cir. 1985) (latest information thirty-five days old, affidavit detailed a long-term and intensive investigation); United States v. Moscatiello, 771 F.2d 589, 597 (1st Cir. 1985) (ongoing narcotics enterprise, year-old information updated by contemporaneous surveillance); United States v. McElroy, 587 F.3d 73, 78 (1st Cir. 2009) (three-year-old information regarding a payroll tax avoidance scheme refreshed by defendants' continuing withdrawals of large sums of cash).

Here, in this matter, there was no prolonged continuing conduct supporting an inference that the Defendant was distributing narcotics from his residence, supporting a finding that there will be contraband involving drugs will be located at his residence. In fact, law enforcement alleged to have observed what they believe was a drug transaction, there was no exchange of any kind if any, there was no individuals seen interacted who are known for being involved in drug activity, the target location or area was not known for being involved in criminal activity and if so it was not mentioned in such affidavit in support of the search warrant. Therefore, there was no probable cause supporting the accusations of investigators observing a drug transaction even if law enforcement did observe a drug transaction this still does not support the finding of probable cause to search the targeted residence.

"A single transaction involving drugs weighs heavily on the staleness scale, particularly where the government relies on a theory of conspiracy to establish ongoing conduct." See United States v. Izzi, 613 F.2d

5

1205, 1210 (1st Cir. 1980) ("A single sale of drugs without more does not establish a conspiracy."); United States v. DeLutis, 722 F.2d 902, 905-906 (1st Cir, 1983) (same); United States v. Wagner, 989 F.2d 69, 74-75 (2d Cir. 1993) (upholding suppression of search based on six-weeks-old information and single marijuana purchase); United States v. Hython, 443 F.3d 480, 485 (6th Cir. 2006) (an isolated drug sale did not support an inference of "inherently ongoing" conduct).

Furthermore, the alleged observation that were observed on such date would be insufficient to establish probable cause due to the passage of time from the search warrant being executed, observations made by law enforcement officials would be considered as stale (old). Additionally, nor does the recorded jail call between Mr. Goncalves –Mendes and Mr. Pina indicate they were seeking to engage in drug trafficking activity, or were involved in an agreement to distribute drugs in violation of 21 U.S.C. 846. "Proof of mere negotiations does not prove a conspiracy." In a drug conspiracy cases, whether an illegal agreement exist will turn on all of the circumstances. Yet the question's fact-specific nature should not make a court lose sight of a critical element: **that the conspiracy involve more than an agreement to transfer drugs from one party to another.** United States v. Wheat, 988 F.3d 299 (6th Cir. 2021). (2021 U.S. App. LEXIS 4085).

Indeed, one commentator has aptly explained that "when the sale of some commodity, such as illegal drugs, is the substantive crime, the sale agreement itself cannot be the conspiracy, for it has no separate criminal object." United States v. Lechuga, 994 F.2d 346, 349 (7th Cir. 1993) (en banc). "Proof of an agreement between two persons is an absolute prerequisite to obtaining a conspiracy conviction. Proof of mere negotiations between drug traffickers will not suffice; the conspirators must actually agree to accomplish an illegal objective or accede to illegal terms that are acceptable to both." United States v. Pennell, 737 F.2d 521 (6th Cir. 1984). The conspiracy charge against the defendant requires proof that he and at least one other person agreed to possessed drugs with the intent to distribute. Although the government need not always establish with whom the defendant conspired, it must nonetheless establish that a conspiratorial agreement existed between me and other individuals, the government has not established such burden. The existence of that an agreement may be proven circumstantially. See Unites States v. Contreras, 249 F.3d 595, 599 (7th Cir. 2001).

**The Supreme Court made it clear in Direct Sales CO. v. United States, 319 U.S. 703, 63 S. Ct. 1265, 87 L. Ed. 1674 (1943) that a charged "conspiracy cannot be made out by pilling inference upon inference." In order to prove a conspiracy charge against a defendant, the government must present some evidence from which it can reasonably be inferred that the person charged with conspiracy knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it. (Ruling "that one does not become a party to a conspiracy by aiding and abetting it . . . and the inference of [conspiracy] cannot be drawn from knowledge that a buyer will use the goods illegally"). Id 319 U.S. at 709.**

## NO GOOD FAITH EXCEPTION APPLIES TO THIS SEARCH WARRANT

Furthermore, the good faith exception does not apply to this matter. An otherwise defective warrant may nonetheless pass muster under the so-called "good faith" exception adopted by the Supreme Court in 1984. See United States v. Leon, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984). Justice White, the author of the majority opinion in Leon, began his explanation of the exception by noting the tenuous relationship between the exclusionary rule and the judicial integrity.

In this case at hand, no reasonable investigator could have believed that probable cause had been shown that indicated drugs would be found at the Defendant's residence 5-6 weeks after an alleged drug transaction took place, or recorded jail call. Mr. Goncalves –Mendes argues that the government has failed to carry its burden of showing good faith, good faith is not to say that the court has implicitly found bad faith on the part of Agent Ball or law enforcement officials who assisted in executing the search warrant. There defendant, as indicated was a small piece of a much larger puzzle and is a misunderstanding the investigation that commenced in the summer of 2019 provides sufficient evidence suggesting that drugs or any other contraband would be found at his residence. See United States v. Chalas, 2020 U.S. Dist. LEXIS 138508 (1st Cir. 2020).

First, the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates. Second, there exists no evidence suggesting that judges and magistrates are inclined to ignore or subvert the Fourth Amendment or that lawlessness among these actors requires application of the extreme sanction of exclusion. Third, and most important, This Honorable Court has found no basis, and are offered none, for believing that exclusion of evidence seized pursuant to a warrant will have a significant deterrent effect on the issuing judge or magistrate. Id. at 916. Suggesting that the Court had "frequently questioned whether the exclusionary rule can have any deterrent effect when the offending officers acted in the objectively reasonable belief that their conduct did not violate the Fourth Amendment," Justice White concluded that this "is particularly true . . . when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." Id. 468 U.S at 918, 920. "Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." Id. 468 U.S at 921.

Examples of "bad faith" reliance on a warrant, while not abundant, do exist. Suppression . . . remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth. The exception we recognize today will also not apply in cases where the issuing magistrate wholly abandoned his judicial role . . . . Nor would an officer manifest objective good faith in relying on a warrant based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely

7

unreasonable." Finally, depending on the circumstances of the particular case, a warrant may be so facially deficient - i.e., in failing to particularize the place to be searched or the things to be seized - that the executing officers cannot reasonably presume it to be valid. Id. at 923 (internal citations omitted).

"Nothing in our opinion suggests, for example, that an officer could obtain a warrant on the basis of a 'bare bones' affidavit and then rely on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct the search." Id. at n.24. See also Malley v. Briggs, 475 U.S. 335, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986) (officer who obtained an arrest warrant on facts that no objectively reasonable officer could have thought to have constituted probable cause could be held personally liable for civil damages); United States v. Fuccillo, 808 F.2d 173, 178 (1st Cir. 1987) (good faith could not save a warrant the supporting affidavit of which recklessly omitted easily obtainable and critical information); United States v. Hove, 848 F.2d 137, 139-140 (9th Cir. 1988) (good faith could not save a warrant where the supporting affidavit lacked any evidence connecting the defendant to the premises to be searched).

## G.P.S DATABASE OBTAINED FROM ELECTRONIC MONITORING DEVICE

As to Mr. Goncalves –Mendes there is no eyewitness testimony or video or audio evidence indicating he violated 18 U.S.C. 1959, 18 U.S.C. 1962(d), or 21 U.S.C. 846, nor was he found to be in possession of any of the evidence, fruits, and instrumentalities of the alleged crimes listed in Attachment B **(See USAO-001049-53)**. Instead the Government relies solely on circumstantial evidence. In particular, it seeks to show that the Defendant allegedly violated 18 U.S.C. 1959, 18 U.S.C. 1962(d), due to other individuals alleged criminal activity. Importantly, the government also seeks to use GPS location information derived from the ELMO device that the defendant was wearing as a condition of pretrial release **(USAO-001055)**. The GPS data places Mr. Goncalves –Mendes at the target location. No warrant was obtained neither before the state court imposed the monitoring device on Mr. Goncalves –Mendes nor before the federal agents obtained the GPS data in this investigation. After arresting Mr. Goncalves –Mendes on June 16, 2020 the government relied upon the GPS information to obtain a warrant to search the Defendant's residence during his arrest.

The Supreme Court has held that a search occurs for Fourth Amendment purposes when the government "attaches a device to a person's body without consent, for the purpose of tracking that individual's movements." Grady v. North Carolina, 575 U.S. 306, 309 (2015). "In the absence of a warrant a search is reasonable only if it falls within a specific exception to the warrant requirement." Carpenter v. United States, 138 Ct. at 2221. Here, no such exception applies.

The Massachusetts Supreme Judicial Court held recently in circumstances similar to these that imposition of electronic monitoring without effective consent violated the Massachusetts Declaration of Rights" prohibition against unreasonable searches and that the GPS data gathered was thus inadmissible.

Commonwealth v. Norman, 484 Mass. 330 (2020) (Gaziano, J.). While federal courts have yet to address the issue, the Court should reach the same finding here, since no exception to the warrant requirement applies. The Court also suppress the any data extracted from Mr. Goncalves –Mendes cellphone, as fruits of the unconstitutional search and seizure of the GPS location data.

The application of the Fourth Amendment to GPS data gathered for purpose of pretrial monitoring is a matter of first impression in the First Circuit. But as noted above, it is established federal law that the gathering and use of GPS location data concerning an individual's constitutes a search for purposes of the Fourth Amendment. Grady v. North Carolina, 575 U.S. at 310; United States v. Jones, 565 U.S. 400, 402 (2012). The Supreme Judicial Court ruled recently that under Article 14 of the Declaration of rights under the Massachusetts Constitution, imposition of GPS monitoring as a condition of pretrial release amounted to an impermissible search where law enforcement officials later used the GPS data to connect to the crime. Commonwealth v. Norman, 484 Mass. at 340.[1] Consequently, it held that the GPS data must be excluded as evidence. Id at 339.

Pursuant to the same reasoning, under the federal law, the Court shall suppress the historical ELMO data concerning Mr. Goncalves –Mendes for two independent sufficient reasons. **First**, the initial imposition of the ELMO device without Mr. Goncalves –Mendes consent was an unreasonable Fourth Amendment search. **Second**, the subsequent, warrantless use of historical GPS data from that device to gather evidence of unrelated criminal activity was an unreasonable Fourth Amendment search. Finally, the Court should also exclude any evidence subsequently obtained from Mr. Goncalves –Mendes after his arrest, as fruits of the initial warrantless search.

### A. Imposition of GPS Monitoring as a Condition of Pretrial Release was an unreasonable Search in Violation of the Fourth Amendment

Individuals have constitutionally-protected "reasonable expectation of privacy in the whole of their physical movements." Carpenter v. United States, 138 S. Ct. 2206, 2217 (2018). A Fourth Amendment search occurs when the government "attaches a device to a person's body without consent, for the purpose of tracking that individuals movements. Grady v. North Carolina, 575 U.S. at 309. Like the cellular-site location information at issue in Carpenter, ELMO data "present[s] even greater privacy concerns that the GPS monitoring of a vehicle" because the ankle monitor is "almost a feature of human anatomy" that "tracks nearly exactly the movements of its owner." Carpenter, 138 S. Ct. at 2218 (internal citations omitted). This is exactly the kind of information that the Fourth Amendment protects from the government search without probable cause. Id.[2]

9

The governments imposition of the device was not based upon the Defendant's effective consent, even though he signed an acknowledgement of the Order of GPS Supervision Conditions on the date of his release from state detention. "When a prosecutor relies on consent to support the validity of a search, it is his burden to prove that consent was freely and voluntary given." United States v. Smith, 533 F. Supp. 2d 227, 232 (D. Mass. 2008) (courts consider the totality of the circumstances in assessing voluntariness).[3] Mere acquiescence to a search is not valid consent. Id.: United States v. Weidul, 325 F.3d 50, 53-54 (1st Cir. 2003) (no consent where, during search of defendant's home, officer stated "I'm going to look here" and defendant's girlfriend said "okay"). In Smith, for example, after a police officer told defendant he was going to search his Mazda automobile, "Smith shrugged and said 'go ahead.' Looking at the totality of the circumstances, [the officer] did not seek (nor did Smith provide) consent to search the Mazda." Id.

Further, a defendant's signing of a form consent is not necessarily sufficient. United States v. Lara, 815 F.3d 605, 609 (9th Cir. 2016) (probation consent form did not unambiguously encompass cell phone searches, even though probationer had opportunity to ask question about terms of agreement before signing). The fact the alternative to Mr. Goncalves –Mendes's signing the Acknowledgement was to remain in detention also counsels against a finding of voluntariness. United States v. Isiofa, 370 F.3d 226, 232-33 (2d Cir. 2004); see also United States v. Gunning, 405 F. Supp. 2d 79, 82 (D. Mass. 2005) ("Consent is not freely given if a reasonable person would have believed that his consent was required by investigating officers.")

---

[1] The Norman court stated that if either initial imposition of GPS monitoring or the government's later use of the location data in a criminal investigation violates the constitution, the data must be suppressed. Id. At 333.

[2] As the Supreme Judicial Court reasoned in Norman, GPS data from ELMO device is no different from the kind of information at issue in Carpenter, because GPS monitoring continuously tracks an individual, "thereby giving probation officers and police access to a category of information otherwise unknowable. The nature and extent of this GPS location data yields a treasure trove of very detailed and extensive information about the individual's coming and goings for law enforcement." Norman, 484 Mass. at 334 (internal quotations omitted).

[3] "The Government can meet its burden of establishing consent to a search by pointing to bail conditions--agreed to by the Defendant— that permit such a search. Once the Government does so, the burden shifts to the Defendant to show that his bail conditions were unreasonable under the circumstances or that he did not fully understand them." United States v. Kissh, 433 F. Supp. 3d 1, 4 (D. Me. 2020), citing United States v. Gates, 709 F.3d 58 (1st Cir. 2013).

In Gunning, the court found that a mailman who agreed to a search during an investigation did not act of his own volition, but rather was "acting in acquiescence to an assertion of authority by the [p]ostal [i]nspectors," United States v. Oriz, 331 F. Supp. 514, 521 (D.P.R. 1971) (emphasis in original). Thus, there was no effective consent to imposition of the GPS requirement, and the government did not obtain a warrant. "In absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement." Carpenter v. United States, 138 S. Ct. at 2221; see also United States v. Lopez, 989 F.2d 24 (1st Cir. 1993) (search unreasonable absent warrant or facts bringing it within exception to warrant requirement). It is the Government's burden to prove that "its warrantless search fits within one of' the recognized exceptions to the warrant requirement. United States v. Tibbs, 49 F. Supp. 2d 47, 51 (D. Mass. 1999). "Consistent with the Fourth Amendment's preference, [warrant requirement exceptions] are narrowly defined." Id. Here, the government cannot meet its burden of proving that an exception applies.

### B. The FBI's Warrantless Obtaining of Historical GPS Data in this Separate Criminal Investigation was a Further Illegal Search.

Independent of the State's unreasonable search imposing the GPS monitor to collect location data, the FBI further violated Mr. Goncalves –Mendes's Fourth Amendment rights in obtaining the information from the Probation Services without a search warrant. The "use of [a] tracking device to actually monitor the location of a person or object is a separate search from installation for Fourth Amendment purposes." United States v. Lambus, 251 F. Supp. 3d 470, 495 (E.D.N.Y. 2017), rev'd on other grounds by 897 F.3d 368 (2d Cir. 2018). See also United States v. Jones, 565 U.S. at 402. Because individuals have a reasonable expectation of privacy in their location data, Carpenter, at 2217, the use of a device "designed to obtain [location] information" is a search implicating those privacy rights. Grady v. North Carolina, 575 U.S. at 310. That the FBI was able to access the Defendant's historical movements gathered through ELMO implicates the issue with warrantless GPS monitoring about which the Supreme Court and other federal courts have expressed concern: the records are "detailed, encyclopedic, and effortlessly compiled," allowing the Government to "travel back in time to retrace a person's whereabouts, subject only to [the Probation Service's] retention policies." Carpenter, 138 S. Ct. at 2210.

Again, it is undisputed that the government failed to obtain a warrant before accessing and using Mr. Goncalves –Mendes's GPS data in this federal investigation that is unrelated to the pending state charges. And again, it is therefore the government's burden to show that the facts of the search place it within one of the "narrowly defined" exceptions to the warrant requirement. United States v. Tibbs, 49 F. Supp. 2d at 51. The Government has not (and cannot) meet this burden.

### C. Evidence obtained from Mr. Goncalves –Mendes's Residence During the Execution of the Search Warrant and Data Extracted from the Defendant's Cellphone Should be Suppressed as Fruits of an Illegal Search

"The exclusionary rule prohibits the introduction of 'tangible and testimonial' evidence 'that is the product of the primary evidence, or that is otherwise acquire as an indirect result of the unlawful search, up to the point at which the connection with the unlawful search becomes so attenuated as to dissipate the taint." United States v. Siciliano, 578 F.3d 61, 68 (1st Cir. 2009). It is the Government's burden to establish that a subsequent search pursuant to a warrant was "genuinely independent" of a prior unlawful search. Murray, 487 U.S. at 542; United States v. Nguyen, 2008 WL 346114, at *4 (D. Mass. Feb. 7, 2008).

Here, the government must establish that the Affidavit that supported the Government's application for a warrant to search the target residence and a warrant to search Mr. Goncalves –Mendes cellphone data, supported probable cause. Siciliano, 578 F.3d at 68. "Probable cause exist when the totality of the circumstances suggest that there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Rigaud, 684 F.3d 169, 173 (1st Cir. 2012). "Probable cause cannot be based on . . . mere suspicion, rumor, or [even] strong reason to suspect [wrongdoing]." United States v. Samboy, 433 F.3d 154, 159 (1st Cir. 2005)): United States v. Mulcahey, 2015 WL 9239755, at *1 (D. Mass. Dec. 17, 2015) (probable cause must be "something more than suspicion").

But once the GPS location information is excised from the affidavit, the remaining statements simply do not link the Defendant to the target residence. See United States v. Curzi, 867 F.2d 36, 46 (1st Cir. 1989) ("The remnants of the affidavit, together with whatever non-speculative inferences might plausibly be drawn therefrom, are too meagre."); See also United Stets v. Ortega, 719 F. Appx' 319, 321 (5th Cir. 2018) (exercised affidavit alleging surveillance of defendant's home showing individuals "enter[ing] [the] house for short periods of time" and "hand-to-hand exchanges at [the] front door with someone from the house" did not establish probable cause that drugs would be found in house) (emphasis added);[4]

Thus, the GPS data was key to providing an inference that Mr. Goncalves –Mendes was residing at the target address. The government cannot establish that the search of the target residence was "genuinely independent" of the illegally seized GPS location data, and thus all evidence including the previously obtained information regarding the cell phone search should be excluded as fruits of the illegal search.

---

[4] See also, United States v. Grifford, 27 F.3d 92, 101 (1st Cir. 2013) (affidavit consisting of electronic records for defendant's home and comparably sized homes, as well as affiant's assessment of inference of marijuana growing, was insufficient without more).

## CONCLUSION

For the reasons set forth above, Mr. Goncalves –Mendes respectfully request that this motion be allowed, and that the Court order suppression of all fruits of evidence obtained during the execution of the search warrant and any information obtained from the Defendants cellphone in the past.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule7.1 (D), Mr. Goncalves –Mendes request oral argument on his motion to suppress because he believes that such argument will be of assistance to the court.

Respectfully Submitted,
By Wilson Goncalves-Mendes
"Pro'se"

Date: August 30, 2021

## CERTIFICATE OF SERVICE

I Wilson Goncalves-Mendes hereby certify that the foregoing document is being served by U.S. mail to the District Court.