UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES | ) ) ) | |
| v. | ) ) | Criminal No. 20-10197-3-LTS |
| WILSON GONCALVES-MENDES, | ) ) ) | |
| Defendant. | ) ) | |

ORDER ON MOTION TO SUPPRESS (DOC. NO. 372)

April 29, 2022

SOROKIN, J.

Wilson Goncalves-Mendes seeks to suppress evidence recovered during the search of the apartment in which he resides. Doc. No. 372.[1] The government has opposed the motion, Doc. No. 387, and the Court held a non-evidentiary hearing on April 25, 2022, Doc. No. 453. For the reasons explained below, Goncalves-Mendes's motion is DENIED.

I.  **BACKGROUND**

The search that is the focus of Goncalves-Mendes's motion was conducted pursuant to a warrant approved by a United States Magistrate Judge on June 4, 2020. The affidavit supporting the warrant application was signed by a Boston Police Detective assigned to a unit specializing in investigations of gang violence and deputized as a member of a federal task force. He prepared the warrant application on behalf of a team of federal, state, and local law enforcement officers investigating members of the NOB and Wendover street gangs for federal racketeering

---

[1] Citations to "Doc. No. __ at __" reference items appearing on the court's electronic docketing system, and pincites are to the page numbers in the ECF header.

crimes.  In the affidavit, the detective related the following facts investigators had gathered during a year-long investigation.  See generally Doc. No. 373-2.

NOB originated in Dorchester.  Its members engaged in drug trafficking, sex trafficking, firearms offenses, and other violent crimes throughout New England, including acts of violence directed at members of a rival street gang.  The investigation had yielded evidence connecting Goncalves-Mendes to specific acts of violence and other crimes leading investigators to believe he was a member of NOB.  The affidavit identified several examples:

- In October 2017, members of NOB robbed and assaulted a member of the rival gang at a public transit station.  Thereafter, Goncalves-Mendes posted a video on social media showing the victim of the robbery being threatened and intimidated in an apparent attempt to interfere with his possible cooperation with law enforcement.  The same video was included in a May 2020 rap video in which Michael Brandao[2] (another NOB member) again threatened the same victim.

- Members of NOB produce rap recordings and videos referencing their gang affiliation and the criminal acts undertaken on behalf of NOB.  Goncalves-Mendes has appeared in some of these videos and has been named in others as an incarcerated member of the organization.  He appears to be a close associate of Kelvin Barros,[3] an NOB member responsible for producing many of the music videos.

- Investigators reviewed video footage of a July 2018 shooting in New Bedford and noted that the suspect shown in the video appeared to have a large arm tattoo and

---

[2] Brandao, also charged in this case, entered a guilty plea on April 26, 2022.  Doc. No. 455.
[3] Barros is also charged in this case.

2

other general physical features that resembled Goncalves-Mendes, and was wearing sneakers similar to those seen on Goncalves-Mendes in social media postings.

- In August 2018, police recovered a stolen car that had been used in a recent shooting in Stoughton. Inside, they found a backpack containing Goncalves-Mendes's personal papers and ammunition. They also found a drink bottle that contained DNA which, according to later testing, matched Goncalves-Mendes's profile. Data from the onboard system in the car showed it had been used to call a phone associated with Goncalves-Mendes.

- In November 2018, there was another shooting in New Bedford. The shooter fled in a car that eluded police during a high-speed chase. When officers located the car, abandoned with the keys still inside, they recovered a cell phone in the car that was connected to Goncalves-Mendes. They also learned that the same car had been stopped by state troopers in Boston earlier that night, and Goncalves-Mendes had been the driver. A subsequent search of the cell phone (pursuant to a warrant) yielded electronic messages placing Goncalves-Mendes in New Bedford on "business" at the time of the shooting, as well as other information appearing to connect Goncalves-Mendes with NOB members and the shooting.

- During surveillance of 12 Clarence Street in Brockton on May 6, 2020, investigators saw what they believed was a street-level drug transaction take place there. They understood the first-floor apartment at this location to be Goncalves-Mendes's residence based on state probation records showing that he was serving a period of home confinement at that address pursuant to a state-court order. The order included

- GPS monitoring, which confirmed he was residing at the Clarence Street apartment as required.

- During a recorded jail call on May 7, 2020, Goncalves-Mendes talked in coded language to Ricky Pina,[4] a member of NOB who was in state custody at the time and who was believed to play a significant role in the gang's drug distribution operation. Investigators understood the conversation to include a description by Goncalves-Mendes of his having sold a substantial amount of drugs from his home while on house arrest there.

Based on these events, the affiant asserted there was probable cause to believe Goncalves-Mendes had committed "various federal crimes, including RICO conspiracy . . . and violent crimes in aid of racketeering," the two crimes identified as the "Target Offenses" in the warrant application.  Id. at 11.  The affiant further explained the basis for his belief that evidence connected to the Target Offenses—including gang-related physical items (e.g., photographs and clothing), weapons, and electronic communications regarding gang-related criminal activity—would be found in Goncalves-Mendes's residence at the time of the anticipated search.

The warrant was executed on the morning of June 16, 2020.  See Doc. Nos. 373-4, 373-5. The law enforcement team conducting the search found and seized: a loaded handgun with an obliterated serial number and two bags of ammunition from the duct leading from a vent beneath Goncalves-Mendes's bed to the basement air handler; two iPhones, items of clothing, and a shoebox containing drugs, a digital scale, and cash in Goncalves-Mendes's bedroom; more cash, a few oxycodone pills, and a driving permit in Barros's name in Goncalves-Mendes's dresser; and an empty handgun case with another shoebox containing ammunition, firearm accessories,

---

[4] Pina is also charged in this case.

and a plastic bag of fentanyl in a cutout area in the wall of the stairwell leading to the basement of the building. At the same time, Goncalves-Mendes was arrested pursuant to a separate federal warrant.

According to a police report documenting the search, one person present told officers that the occupants of Goncalves-Mendes's apartment did not have keys to the basement, the door to which appeared to have a "universal 'bathroom style' locking mechanism." Doc. No. 373-5 at 3. Another person present said the door did not have a single key, that any key worked to open it, and that all occupants of the building had access to the basement. Per the report, the first person then said "in broken English" that the occupants of the apartment did store items in the basement. Id.

The facts set out in the warrant and the related reports Goncalves-Mendes has submitted in support of his motion are largely, and perhaps entirely, undisputed. Goncalves-Mendes has not provided his own affidavit addressing, let alone contesting, any of the facts described by the affiant and the officers who authored the post-search reports. Nor has he provided any other statements or evidence putting any material facts in dispute for purposes of his motion. Thus, the Court heard counsel on the motion but found no evidentiary hearing warranted, and now resolves the motion to suppress on the papers as illuminated by counsels' oral argument.[5]

---

[5] The defendant bears the burden to establish a violation of the Fourth Amendment. United States v. Young, 835 F.3d 13, 19 (1st Cir. 2016). And, there is no "presumptive right to an evidentiary hearing on a motion to suppress." United States v. D'Andrea, 648 F.3d 1, 5 (1st Cir. 2011). To establish entitlement to such a hearing, a "defendant must show that there are factual disputes which, if resolved in his favor, would entitle him to" suppression. United States v. Staula, 80 F.3d 596, 603 (1st Cir. 1996).

II.     **DISCUSSION**

Goncalves-Mendes advances three arguments in support of his request that the Court suppress the evidence found during the search of his residence.[6]  Doc. No. 373 at 4-11.  All of them fail for reasons identified by the government in its opposition memorandum.  Doc. No. 387 at 4-18.  The Court will address each of the three challenges in turn.

First, Goncalves-Mendes argues that the affidavit submitted in support of the application for a search warrant failed to establish a nexus between any criminal offenses and the location investigators targeted for their search.  Doc. No. 373 at 4-7.  In mounting such a challenge, Goncalves-Mendes must overcome the "significant deference" this Court must necessarily accord to the "initial evaluation" made by the neutral Magistrate Judge who reviewed and approved the warrant application.  United States v. Ribeiro, 397 F.3d 43, 48 (1st Cir. 2005).  He has not done so here.

One problem with this challenge is it largely depends on Goncalves-Mendes's ability to separate the series of earlier violent crimes attributed to him from the apparent drug distribution that arose closer in time to the warrant application.  According to Goncalves-Mendes, the earlier crimes are not linked to the target location, and the lack of detail provided about the single observed drug sale is inadequate to justify a search of his home.  Doc. No. 373 at 4-5.  However, a fair reading of the affidavit—a reading apparently, and reasonably, adopted by the Magistrate Judge—is that investigators had probable cause connecting Goncalves-Mendes to NOB and a pattern of criminal acts undertaken as part of that enterprise from 2017 through 2020.  The

---

[6] Goncalves-Mendes follows his three challenges with a section urging the Court to find that the "good faith" exception to the exclusionary rule should not apply here.  Doc. No. 373 at 11-13. Because the Court finds no constitutional violation triggering the exclusionary rule in the first instance, it need not consider (or hold an evidentiary hearing regarding) application of the "good faith" exception to that rule in this case.

affidavit described evidence linking Goncalves-Mendes to NOB efforts to intimidate a robbery victim; his participation in rap recordings about NOB, its members, and its crimes; evidence suggesting he committed or participated in at least three gang-related shootings; and evidence he talked to another NOB member about selling drugs out of his home, and was seen by investigators doing so, a month before the warrant application.[7]  These events do not suggest that Goncalves-Mendes was merely involved in street-level drug distribution, whether a single transaction or otherwise.  Rather, they reasonably support the affiant's view that he was involved, over a period of years and continuing through at least May 2020, in a RICO conspiracy as a member or associate of NOB who participated in at least two racketeering acts.  See Doc. No. 387 at 8-9 (laying out the applicable legal standards).

      Another stumbling block Goncalves-Mendes faces in his challenge to the requisite nexus is that the affiant supplements his description of actual criminal conduct attributable to Goncalves-Mendes with conclusions drawn based on his own training and experience in investigations such as these.  The affiant calls upon his training appropriately, and as to subjects upon which the Magistrate Judge reasonably could rely on such information in assessing the probable cause showing.  See United States v. Floyd, 740 F.3d 22, 35 (1st Cir. 2014).  Goncalves-Mendes contends that the earlier violent crimes—and even the more recent evidence of drug distribution—are stale; that the affidavit provides no basis to believe evidence of the

---

[7] Goncalves-Mendes complains that the affidavit provides no detail about the single drug sale investigators apparently witnessed at the Target Location.  The absence of such detail does not undermine the probable cause showing here.  This was not an affidavit focused on evidence of drug trafficking; rather, it supported a request for a warrant to obtain evidence of an ongoing RICO conspiracy, of which drug trafficking was only one part.  And, as the government urged during the motion hearing, the affidavit's description of the May 7 recorded call between Goncalves-Mendes and Pina provides a sufficient and reasonably contemporaneous nexus—between Goncalves-Mendes and drug trafficking, and between Goncalves-Mendes and NOB—without regard to any drug sale observed the day before that call.

violent crimes would be located in Goncalves-Mendes's home years later; and that the recorded call between Pina and Goncalves-Mendes failed to connect drug activity with the Target Location. Doc. No. 373 at 5-7. But the affiant's experience underlying the conclusions he lays out in the warrant application undermines Goncalves-Mendes's challenges and supports the Magistrate Judge's determination of probable cause. See Doc. No. 373-2 at 10, 18-23 (describing affiant's background, basis for believing specified categories of evidence would likely be found in Goncalves-Mendes's home, and experience showing electronic communications and files can be recovered despite the passage of long periods of time); cf. United States v. McLellan, 792 F.3d 200, 211 (1st Cir. 2015) ("[W]e do not believe this two-plus-month delay in applying for the warrant rendered the information in the affidavit stale."). His challenges are further undercut by the affidavit's description of evidence suggesting Goncalves-Mendes's involvement in NOB persisted as recently as a month before the warrant application, as well as by common sense.[8]

---

[8] For example, the Magistrate Judge reasonably and sensibly could have concluded that items such as clothing and weapons are often durable and are likely to be kept in a person's place of residence. She also would not require the guidance of an expert in order to discern that when two men speaking on a recorded telephone call talk about something occurring at "the crib," they are likely talking about the non-incarcerated party's home. Indeed, the affidavit describes the May 7 recorded call as involving coded language, which investigators interpreted as Goncalves-Mendes expressing interest in working with Pina, believed by investigators to be "a significant drug dealer within NOB," to further NOB's drug trafficking enterprise. Doc. No. 373-2 at 18. Though Goncalves-Mendes correctly points out that the actual transcript of the recorded call does not expressly use words like "drugs," "narcotics," "cocaine," or the like, a review of the transcript confirms the reasonableness of the interpretation described in the affidavit. Doc. No. 373-3. Goncalves-Mendes has offered no evidence suggesting any dispute, a different view, or another interpretation that would call into question any of these conclusions, and it is his burden to do so.

On the record before the Court, Goncalves-Mendes simply has not identified any basis for this Court to second-guess the assessment of the Magistrate Judge that the affiant provided a sufficient nexus between the described criminal acts and Goncalves-Mendes's residence.

Second, Goncalves-Mendes complains that investigators violated the Fourth Amendment by soliciting GPS data collected by state probation through an electronic monitor Goncalves-Mendes was required to wear as a condition of his release by a state-court judge, and then relying on that information to connect Goncalves-Mendez to the location they sought permission to search. Doc. No. 373 at 8-10. Even assuming that the federal investigators' review of state probation GPS information amounted to a constitutional violation,[9] such a finding would not provide Goncalves-Mendes an avenue to successfully challenge the search warrant.[10] This is so because the affidavit supporting the warrant application establishes probable cause to believe Goncalves-Mendes lived at the identified location without regard to the single passing reference to the GPS information. Without reviewing or relying on any GPS data, the affiant could permissibly search state probation records to learn that a state-court order existed requiring

---

[9] This is a position another session of this Court has recently considered and rejected for several reasons. See United States v. Hunt, No. 20-cr-10119-DJC, 2021 WL 4392083, at *2- (D. Mass. Sept. 24, 2021) (finding that the defendant had no objectively reasonable expectation of privacy in the GPS information, that he had consented to the collection and use of such information by law enforcement, that the limited scope of the information obtained by federal investigators was reasonable, and that the good-faith exception to the exclusionary rule would apply in any event). Because the GPS information is not integral to the showing of probable cause supporting the warrant to search Goncalves-Mendes's home in the circumstances presented, the Court need not consider further whether to adopt one or several of the alternative reasons laid out in Hunt for denying suppression.

[10] The government confirmed at the suppression hearing that it does not intend to offer at trial any location data or other information derived from the GPS monitor, so the Court need not look beyond the references to such information in the warrant application and consider whether such evidence would warrant suppression more generally.

Goncalves-Mendes to live at the address during the relevant period.[11]  See Doc. No. 373-2 at 11. Such an order is sufficient to provide the requisite connection between Goncalves-Mendes and the identified Target Location.  See Doc. No. 387 at 14 (noting that warrant containing tainted information can survive challenge if probable cause remains after redaction of such information and re-examination of edited affidavit).

Finally, Goncalves-Mendes challenges the scope of the search, arguing the officers exceeded their authority under the warrant when they entered the locked basement door and searched the stairwell and the basement.[12]  Doc. No. 373 at 10-11.  This argument, however, leads inescapably to a "Catch-22" identified by the government.  Doc. No. 387 at 16-18.  If Goncalves-Mendes lacked control over or access to the stairwell and the basement, then he cannot have had a reasonable expectation of privacy in those areas and, thus, lacks standing to assert a challenge to the search thereof.  If, on the other hand, Goncalves-Mendes or other occupants of his apartment did have access to the basement, then the warrant expressly permitted the officers to search it.  See Doc. No. 373-1 at 2, 4 (permitting a search of the premises including "all rooms, crawl spaces, . . . storage areas, [and] containers . . . located on or near the premises, that are owned or under the control of the occupants of such premises" (emphasis added)).  In either case, suppression of the evidence found in the stairwell and the basement is unwarranted.

---

[11] Goncalves-Mendes does not claim he lived elsewhere at the relevant time (or at any other time), nor does he challenge the other facts identified by the affiant as the basis for his belief that the location was Goncalves-Mendes's residence.  That is, he does not assert that the state-court judge ordered him to live elsewhere while on house arrest, or that he provided a different home address to his state probation officer.  And, of course, the personal items belonging to Goncalves-Mendes that were recovered during the search would undermine the credibility of any such contention.

[12] Goncalves-Mendes has not expressly claimed or attempted to demonstrate, in his papers or during the motion hearing, that he had control over any part of the basement.

10

III.     **CONCLUSION**

Accordingly, Goncalves-Mendes's Motion to Suppress Evidence Seized from His Residence and Any Evidence Relating to GPS Data Obtained from His Electronic Monitoring Device (Doc. No. 372) is DENIED.

SO ORDERED.

 /s/ Leo T. Sorokin
United States District Judge